UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALAMCO, | No. 2:21-cv-01201-KJM-KJN |
| Plaintiff, | ORDER |
| v. | |
| J. R. Simplot Company, et al., | |
| Defendants. | |

CALAMCO, the plaintiff in this declaratory judgment action, moves to remand the case to state court and to disqualify Perkins Coie LLP, which represents the defendant, J.R. Simplot Company. Simplot has established this court's jurisdiction based on the parties' diversity of citizenship and the amount in controversy, and the court is not persuaded Perkins Coie faces a disqualifying conflict of interest. **The motions to remand and disqualify are denied**.

I.  **BACKGROUND**

CALAMCO is an agricultural cooperative. Compl. ¶ 4, Not. Removal Ex. C, ECF No. 1-3. It was organized in the 1950s to supply fertilizers to California growers. *See id.* ¶ 9. Simplot is a food and agricultural business. *See id.* ¶ 5. It sells many products, including fertilizer. *See id.* ¶¶ 9, 15. Simplot and CALAMCO compete in some fertilizer markets, but they have also worked together over the years. *Id.* ¶¶ 15–16. Some time ago, they signed a "Handling and Storage Agreement" for a fertilizer known as UAN 32. *See id.* ¶¶ 17–19. CALAMCO

1

agreed to construct a holding tank and operate it exclusively for Simplot's use, and Simplot agreed to supply UAN 32 to CALAMCO's shareholders, many of whom are farmers. *See id.* ¶¶ 9–10, 19. When Simplot and CALAMCO signed their agreement, CALAMCO was not in the business of manufacturing or distributing UAN 32, but in its view, the agreement does not stand in the way if it decided to enter the UAN 32 market. *See id.* ¶ 20. Simplot disagrees. *See id.* ¶¶ 21–31. This lawsuit, a declaratory judgment action by CALAMCO, grew out of that conflict: does the handling and storage agreement permit CALAMCO to manufacture and distribute UAN 32 in competition with Simplot? *See id.* ¶¶ 32–34.

That question does not require answering at this stage. A variety of preliminary conflicts must be resolved first. To understand these conflicts, it is necessary to review CALAMCO's ownership structure and a recent corporate governance disagreement. A Simplot subsidiary, the Cal Ida Chemical Company, owns many of CALAMCO's outstanding shares, and Simplot decides how Cal Ida votes those shares. *See id.* ¶¶ 11–14; Clyde Decl. ¶ 3, ECF No. 31. The shares Cal Ida owns are known as "class B" shares. *See* Compl. ¶¶ 10–11. The other class of shares ("class A" shares) are owned mostly by farmers. *See id.* ¶ 9. Each group of shareholders elects separate slates of CALAMCO directors: four directors are elected by the class A shareholders, and three are elected by the class B shareholders. *Id.* ¶ 13. Because Simplot owns most of the class B shares via Cal Ida, it has appointed Simplot executives to the three class B board seats. *Id.* ¶ 14.

In the summer of 2020, CALAMCO's management was working on a plan to distribute UAN 32. *See id.* ¶ 28. Simplot claims CALAMCO's management "secretly enlisted" the class A directors in this plan and withheld information from Simplot and the class B directors. *See* Answer & Countercl. ¶¶ 93–94. Simplot also objects to the plan. In its assessment, CALAMCO would run afoul of California law, the company's purposes, and the UAN 32 agreement between Simplot and CALAMCO if it entered the market for UAN 32 without consent from the class B directors, and thus indirectly, from Simplot. *See* Docummun Decl. Ex. B, ECF No. 30-2.

As this conflict was brewing, an attorney at Perkins Coie LLP wrote to CALAMCO on behalf of Cal Ida and the class B directors, demanding that CALAMCO allow the directors to

inspect and copy a variety of records related to management's UAN 32 plans. *See* Docummun Letter (Aug. 19, 2020), Morris Decl. Ex. A, ECF No. 10. CALAMCO's attorneys agreed to send some information, asked for clarification on other points, and refused other requests outright. *See* Morris Letter (Aug. 20, 2020), Morris Decl. Ex. B, ECF No. 10. Negotiations continued but ultimately failed. CALAMCO refused to produce three types of documents: (1) "communications with potential customers and sources of UAN 32," (2) "internal evaluations of the profitability of entering into the UAN 32 market," and (3) correspondence between CALAMCO's CEO and its outside attorneys. *See* Morris Letter (Sept. 9, 2020), Morris Ex. B, ECF No. 10. CALAMCO's outside counsel explained the company's concerns in a letter:

> Were Cal Ida simply a Class B Shareholder and not a wholly-owned subsidiary of J.R. Simplot Company, with which CALAMCO will compete for the sale of UAN 32, . . . CALAMCO would share the withheld information. However, Cal Ida is not simply a Class B Shareholder, and the directors whom it has appointed to the CALAMCO Board of Directors are not merely employees of Cal Ida; they are employees of Simplot.
>
> . . .
>
> Simplot's interests in this matter are solely as a third-party competitor in the UAN32 market. Were CALAMCO to share competitive information with Simplot, it would expose itself to criticism from CALAMCO shareholders and potential liability to other competitors. . . .

*Id.* at 14.[1]

As an alternative to full disclosure, CALAMCO offered to brief the class B directors in a board meeting if they signed a nondisclosure agreement, *see id.* at 17, but the class B directors refused, describing the proposed agreement as "unreasonably restrictive," Pet. ¶¶ 43–44, Req. J. Not. Ex. A, ECF No. 28-1.[2] Negotiations over an alternative agreement did not succeed, *see, e.g.*, Clyde Decl. ¶¶ 4–5, so the class B directors and Cal Ida, represented by Perkins Coie, filed a

---

[1] Pages cited in this document are those applied by the CM/ECF system.

[2] The document quoted above is one of many produced in related state court writ proceedings, discussed further below. The court takes judicial notice of documents filed in these state proceedings, but not that any particular claim or statement within those documents is true. *See United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

petition in the California Superior Court.  *See generally* Pet., Req. J. Not. Ex. A.  The class B directors cited California Corporations Code section 1602, which gives directors "the absolute right at any reasonable time to inspect and copy all books, records, and documents of every kind." *See* Mem. in Support of Pet. at 7–9, Morris Decl. Ex. C, ECF No. 10.  Cal Ida relied on section 1601, which gives shareholders a more limited right to inspect the "accounting books, records, and minutes of proceedings of the shareholders and the board and committees of the board . . . for a purpose reasonably related to the holder's interests as a shareholder."  Cal. Corp. Code § 1601(a)(1); *see also* Mem. in Support of Pet. at 9–10.

CALAMCO opposed the state petition.  It argued California law did not give Simplot the right to extract sensitive information from a competitor and CALAMCO's CEO had a fiduciary duty not to share the company's internal plans with a competitor.  *See* Opp'n to Pet. at 4–6, Req. J. Not. Ex. B, ECF No. 28-2 (citing *Havlicek v. Coast-To-Coast Analytical Servs., Inc.*, 39 Cal. App. 4th 1844, 1855 (1995)).  It also invoked its attorney-client privilege over some documents. *See id.* at 6.

The superior court issued a tentative ruling in favor of Cal Ida and the class B directors. *See generally* Tentative Order, Req. J. Not. Ex. C, ECF No. 28-3.  Starting with the class B directors, the court found no reason to believe they had breached or would breach any fiduciary duties, so it was not persuaded the company could deny their inspection requests.  *Id.* at 7.[3]  In the face of the directors' "absolute right" under section 1062, the court was unwilling to keep information from the class B directors based only on the "mere specter of possible improper use." *Id.*  The wiser course, in the court's view, was to address any misuses after the fact.  The company could sue any directors if they breached their fiduciary duties.  *See id.*

The superior court also rejected CALAMCO's claim of attorney–client privilege.  *See id.* at 7–8. Although California courts had sometimes permitted corporations to withhold privileged communications from their directors, they had done so only in ongoing shareholder derivative actions between the corporation and the requesting director.  *See id.* at 8 (citing *Tritek Telecom, Inc. v. Superior Ct.*, 169 Cal. App. 4th 1385 (2009); *Titmas v. Superior Ct.*, 87 Cal. App. 4th 738

---

[3] Pages cited in this document are those applied by the CM/ECF system.

1  (2001); and *Nat'l Football League Props., Inc. v. Superior Ct.*, 65 Cal. App. 4th 100 (1998)).
2  CALAMCO and the class B directors were not on opposite sides of a shareholder derivative
3  lawsuit. *See id.* Nor could the superior court conclude the class B directors might gain a
4  "personal competitive advantage." *Id.* And even if CALAMCO did have an independent
5  privilege, the superior court held that CALAMCO had waived that privilege by giving the
6  disputed documents to the class A directors. *Id.*

7  CALAMCO did not make independent arguments about Cal Ida's shareholder request
8  under section 1601; rather, it focused on the class B directors and section 1602. *See id.*; *see also*
9  Opp'n to Pet. at 4–7. The superior court distinguished section 1602, which imposes disclosure
10 limits only implicitly, from section 1601, which imposes limits expressly. *Id.* For example,
11 under section 1601, shareholders are expressly limited to seeking "accounting books, records, and
12 minutes of proceedings of the shareholders and the board and committees of the board." Cal.
13 Corp. Code § 1601(a)(1). Directors, by contrast, may request "all books, records and documents
14 of every kind" and may "inspect the physical properties of the corporation" under section 1602.
15 *Id.* § 1602. Nor did the superior court believe CALAMCO's attorney–client privilege limited its
16 disclosure obligations under section 1601. *See id.* at 8–9. Section 1601 permits shareholders to
17 request "accounting books, records, and minutes of proceedings of the shareholders and the board
18 and committees of the board." *Id.* at 9 (quoting Cal. Corp. Code § 1601). The superior court
19 found it "difficult to see" how records of that type might be privileged. *See id.* at 8–9.

20 No party requested a hearing, and no party objected to the superior court's tentative
21 ruling, so it became final. *See id.* at 2. The superior court ordered the class B directors and Cal
22 Ida to prepare a proposed order under Rule 3.1312 of the California Rules of Court. *Id.* at 9.
23 Under that rule, a prevailing party prepares and serves a proposed order on the opposing party.
24 Cal. R. Court 3.1312(a). The opposing party may then "disapprove" the proposed order, and the
25 prevailing party transmits a "summary" of the disapproval to the court along with the proposed
26 order. Cal. R. Court 3.1312(b).

27 Perkins Coie prepared a proposed order on behalf of Cal Ida and the class B directors. *See*
28 Proposed Order, Req. J. Notice Ex. D, ECF No. 28-4. The proposed order did not distinguish

between the directors and Cal Ida.  Nor did it distinguish between the different rights created by sections 1601 and 1602.  Instead, it required CALAMCO to send the same information to both Cal Ida and the class B directors.  *See generally id.*  The proposal was also very broad.  For example, it demanded "all communications . . . referring or in any way relating to the UAN32 project."  Proposed Order at 3.  It required CALAMCO to disclose "all analyses of any market for UAN32," "all analyses of the parties with whom CALAMCO expects to compete if it proceeds with the UAN 32 project," and "[a]ll books and records relating to any competition between 'CALAMCO and Simplot' and CALAMCO and any other shareholder . . ."  *Id.*  As a catch-all, it directed CALAMCO to open its "books and records" related to CALMCO's "internal affairs"—without limitation—for the last four fiscal years.  *Id.*  And to eliminate any doubts, the proposed order made clear that CALAMCO must disclose correspondence between its outside counsel and its CEO "relating to the current issues between CALAMCO and Simplot."  *Id.*  CALAMCO would also be obligated to offer up its internal financial analyses, pricing scenarios, lists of potential customers, and marketing information.  *See id.*  In sum, if the proposed order were adopted, then the court would order CALAMCO to give Simplot's executives and its subsidiary not only CALAMCO's plans for competing with Simplot, but also the legal advice CALAMCO was relying on in forming those plans.

A company and its attorneys facing the prospect of such an invasive writ might be expected to protest.  CALAMCO did not.  It did not return to the court for clarification or with a motion to reconsider.  It did not appeal or seek relief in a higher court.  It did not disapprove of the proposed order, as the applicable rules of court allowed.  To the contrary, according to a Perkins Coie attorney, CALAMCO's counsel "negotiated the language" in the proposed order.  Clyde Decl. ¶ 8.  In any event, the proposed writ became final, and CALAMCO began producing documents to Perkins Coie.  *Id.* ¶ 7 (citing Sasso Decl. Ex. 25 (under seal)).  CALAMCO's counsel did not ask for some documents to be distributed only to the class B directors or to be withheld from Cal Ida and Simplot.  *Id.* ¶¶ 8–10.  Nor did it assert any attorney–client privilege over particular documents.  *Id.* ¶¶ 10–11.

A few days after CALAMCO began producing documents, an attorney from Perkins Coie had a phone call with CALAMCO's outside counsel. *See* Glynn Decl. ¶ 2. That attorney said the class B directors were "open to considering and voting on CALAMCO's UAN 32 project." Glynn Decl. ¶¶ 2–3. But he also said that Simplot believed CALAMCO would breach its agreement with Simplot by marketing UAN 32. *See id.* ¶¶ 2–4. He threatened years of ruinous litigation if it did. *Id.* ¶¶ 4–5. CALAMCO's outside counsel believed after this exchange that Perkins Coie's clients had "opposing interests." *Id.* ¶ 6. "The B Directors," he concluded, "have fiduciary duties to CALAMCO." *Id.* "Meanwhile," in his assessment, "Simplot was committed to using its superior resources and appetite for litigation to harm CALAMCO." *Id.* Despite these threats and concerns, CALAMCO continued producing documents to Cal Ida via Perkins Coie. *See* Morris Decl. ¶ 7. This production included "numerous attorney–client communications," even "substantive discussions" about the disputed agreement. *Id.*

About a month after the attorneys' phone call, CALAMCO filed its complaint in this case. *See id.* ¶ 7; Clyde Decl. ¶ 12; Not. Removal Ex. C. It asks for a declaration (1) that its handling and storage agreement with Simplot do not bar CALAMCO from "selling distributing or marketing UAN 32" and (2) that CALAMCO is "entitled to sell UAN 32 in competition with Simplot." Compl. at 7–8. Perkins Coie appeared on behalf of Simplot and removed the action to this court. *See* Not. Removal, ECF No. 1. Within a few weeks, CALAMCO asked Perkins Coie to withdraw. Clyde Decl. ¶ 14.

Soon after Perkins Coie refused to withdraw, CALAMCO moved to disqualify it. *See generally* Mot. Disq., ECF No. 8. It argues the firm obtained CALAMCO's privileged and confidential information in the state court writ proceedings and is representing clients on opposite sides of the case: the three directors in the writ proceedings and Simplot in this case. *Id.* at 7–12. Perkins Coie and Simplot oppose the motion, *see generally* Opp'n Disq., ECF No. 29, and CALAMCO has replied, *see generally* Reply Disq., ECF No. 44. The court took the matter under submission without hearing oral argument. *See* Min. Order, ECF No. 48.

CALAMCO also moves to remand the case to the state court. *See generally* Mot. Remand, ECF No. 7. It argues Simplot has not shown more than $75,000 is in controversy. *See*

7

1  *generally id.* That motion is also fully briefed and was submitted without oral argument. *See*
2  *generally* Opp'n Remand, ECF No. 32; Reply Remand, ECF No. 43; Min. Order, ECF No. 48.

3       The court begins with the remand motion, as it raises a question regarding subject matter
4  jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks
5  subject-matter jurisdiction, the court must dismiss the action.").

6  **II.  REMAND**

7       At the outset, Simplot asks the court to seal some of the evidence submitted in opposition
8  to the motion to remand; the court previously sealed this information provisionally. *See* Order
9  (Oct. 4, 2021), ECF No. 46. A motion to remand is "more than tangentially related to the merits."
10  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). It is potentially
11  dispositive. *See Petersen-Dean, Inc. v. SolarWorld Americas, Inc.*, No. 17-07326, 2018 WL
12  1151731, at *4 n.7 (N.D. Cal. Mar. 5, 2018) (citing *Flam v. Flam*, 788 F.3d 1043, 1047 (9th Cir.
13  2015)). For that reason, Simplot must offer "compelling reasons" in support of its request to seal.
14  *Id.*

15       Simplot argues the sealed information, if exposed, would reveal sensitive and confidential
16  business information that belongs to both Simplot and CALAMCO. The court agrees that if the
17  documents in question were publicly disclosed, third parties may use the filings for "improper
18  purposes." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting
19  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Competitors and customers could
20  troll the docket for Simplot's and CALAMCO's carefully guarded and secretly developed price
21  strategies and business plans, for example. The public's interest in these specifics is minimal
22  given its limited purpose here, namely deciding whether more than $75,000 is in dispute. The
23  request to seal is thus granted. The parties are cautioned that if this same evidence is relevant
24  again in the future, the public's interest in disclosure could be greater, and a request to seal must
25  be renewed and again justified. *See, e.g.*, *Kamakana*, 447 F.3d at 1179. With this preliminary
26  matter resolved, the court turns to the remand motion itself.

27       "The party asserting federal jurisdiction bears the burden of proving the case is properly in
28  federal court." *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 957 (9th Cir.

2001). Simplot bears that burden as the removing defendant. *See id.* It relies on 28 U.S.C. § 1441, which permits a defendant to remove an action to a federal district court with original jurisdiction. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332, federal district courts have original jurisdiction over civil actions in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). CALAMCO and Simplot are citizens of different states. *See* Not. Removal ¶¶ 5–8. The only dispute is whether "the matter in controversy" exceeds $75,000.

When, as in this case, a plaintiff seeks only declaratory relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). "[T]he test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *Ford*, 264 F.3d at 958. CALAMCO asks for a declaration that its agreement with Simplot "does not restrain CALAMCO from selling, distributing or marketing UAN 32, and that CALAMCO is entitled to sell UAN 32 in competition with Simplot." Compl. at 8. Simplot can prove this court has jurisdiction by showing it is "more likely than not" that either (1) the right to compete in the market for UAN 32 is worth more than $75,000 to CALAMCO or (2) a UAN 32 market without competition from CALAMCO is worth $75,000 more to Simplot than a market with competition from CALAMCO. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

Estimating the value of a competitive endeavor is often difficult. A new competitor might sell a quantity of product, but how much and at what price and cost, and will those sales displace those of a particular rival? Federal courts do not require precision in this situation. *See Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1172 (C.D. Cal. 2008). Defendants may rely on "reasoning that includes assumptions" to show that a particular amount is in controversy. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015). "[T]hose assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.*

Simplot has shown that more than $75,000 is in controversy. It generates many millions of dollars annually selling UAN 32. *See* Sheldon Decl. ¶ 8. Year after year, its profits from these sales are also many multipliers larger than $75,000. *See id.* ¶ 9. During the first year alone,

9

1   CALAMCO's management expects to take a third or more of this market from Simplot. *See*
2   Sasso Decl. Ex. 5, 11. CALAMCO has also begun work on a $5 million infrastructure project as
3   part of its efforts to enter the market, suggesting it pins the value of its plans as much higher than
4   $75,000. *See id.* Ex. 5, 13. Federal district courts have relied on similar evidence in similar
5   disputes to conclude they have jurisdiction. *See, e.g.*, *Luna*, 575 F. Supp. 2d at 1173–74 (relying
6   on estimates of employee's projected value to company); *Gonzalez v. Proctor & Gamble Co.*, No.
7   06-869, 2006 WL 8455601, at *1 (S.D. Cal. June 20, 2006) (relying on declaration about future
8   costs of complying with injunction).

9       CALAMCO argues any projections of potential revenues, profits, or losses are all
10   "theoretical and contingent." Reply Remand at 4. It argues, in other words, that despite detailed
11   plans, costly investments, and this preemptive lawsuit, it might never actually enter the market for
12   UAN 32. *See, e.g.*, *id.* ("CALAMCO seeks a declaration that [its agreement with Simplot] does
13   not preclude [UAN 32] sales, but it does not directly follow that CALAMCO necessarily will
14   make such sales (much less that it will necessarily profit or Simplot will suffer losses from such
15   sales)."). Simplot is not required to demonstrate to a certainty that it will suffer particular losses
16   or that CALAMCO will earn a specific return. It need only show that the declaratory relief
17   CALAMCO seeks is likely worth more than $75,000. *See Sanchez*, 102 F.3d at 404. Simplot's
18   assumption that CALAMCO will follow through on its plans is reasonable and supports its claim
19   to jurisdiction. *See, e.g.*, *Luna*, 575 F. Supp. 2d at 1174 (rejecting argument that claims were
20   speculative because plaintiff was "not presently competing").

21       Simplot has shown that more than $75,000 is in controversy; this court has original and
22   removal jurisdiction. The court thus turns to the next question, whether Perkins Coie should be
23   disqualified from representing Simplot in this matter.

24   **III.   DISQUALIFICATION**

25       This District has adopted the Rules of Professional Conduct of the State Bar of California
26   and any applicable state court decisions as its own standards of professional conduct. E.D. Cal.
27   L.R. 180(e). If an attorney or firm takes on a representation in violation of these rules, a district
28   court has authority to impose sanctions, including disqualification. *See* E.D. Cal. L.R. 110;

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1107 (E.D. Cal. 2015). In exercising that authority, courts may resolve factual disputes and make findings based on the evidence. *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (citing *Dept. of Corps. v. SpeeDee Oil Change Sys.*, 20 Cal. 4th 1135, 1143 (1999)).

Courts grant motions to disqualify only when absolutely necessary. *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004). Judicial reluctance acknowledges how disqualifications "often pose the very threat to the integrity of the judicial process that they purport to prevent." *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 300–01 (1989). "[T]he paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1428 (1999). Several considerations weigh in the balance. On the one hand, parties have a "right to counsel of choice," and attorneys have an "interest in representing a client." *Lennar*, 105 F. Supp. 3d at 1108 (quoting *In re Lee G.*, 1 Cal. App. 4th 17, 26 (1991)). Clients may also face a heavy financial burden and delays if forced to replace their attorneys, so the risk of "tactical abuse" looms large. *Id.* (quoting *In re Lee G.*, 1 Cal. App. 4th at 26). But on the other hand, "our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest," and this unfettered advocacy is a "fundamental principle." *Id.* (quoting *In re Lee G.*, 1 Cal. App. 4th at 26).

CALAMCO argues Perkins Coie faces a disqualifying conflict of interest because it obtained CALAMCO's confidential information and "attorney–client communications, including substantive discussions of the [agreement] at issue in this case." Morris Decl. ¶ 7. It argues the superior court gave it no choice but to disclose those sensitive materials, so the materials should remain confidential and thus disqualifying given that Perkins Coie attorneys have now received them. *See, e.g.*, Reply at 2. The reality is more complicated. The writ proceedings in the superior court focused on two requests: the class B directors' request under section 1602 and Cal Ida's shareholder request under section 1601. Although CALAMCO did not distinguish these statutory sections, the superior court did.

11

For the directors' claims under section 1602, the superior court focused on their "absolute" statutory rights, cases interpreting those rights, the directors' fiduciary duties to CALAMCO, and the overlap between the corporation's privileges and the directors' privileges. *See* Tentative Order at 7–8. If CALAMCO had possessed a privilege distinct from that of its class B directors, the superior court reasoned, it had waived that privilege by disclosing communications to the class A directors. *See id.* at 8.

For Cal Ida's shareholder inspection claim, the superior court focused on the limits built into section 1601, which provide for narrower disclosures than section 1602. *See id.* at 8–9. By the superior court's reading, those limits permitted disclosures even to litigation adversaries. *See id.* at 8. But the superior court did not interpret section 1601 as requiring corporations to disclose communications between outside counsel and management. It wrote that it was "difficult to see" how the information Cal Ida had a right to inspect—accounting records, for example—might reveal confidential communications with attorneys. *See id.* at 9.

In sum, the superior court reached two conclusions: (1) CALAMCO was required to disclose "all books, records and documents of every kind"—including privileged communications—to the class B directors, who owe fiduciary duties to the company and face liability for breaches, but (2) CALAMCO was not required to make broad disclosures to Cal Ida, and for that reason, CALAMCO could not withhold information out of concerns about competition and privilege. In other words, by the superior court's reasoning, CALAMCO could have withheld privileged and confidential information from Cal Ida even if it was obligated to disclose that information to the class B directors.

But CALAMCO did not withhold information. To the contrary, its counsel negotiated a writ that required it to disclose everything to Cal Ida. Its attorney then expressly approved that writ, the superior court judge signed the proposal, and CALAMCO never challenged the signed writ. It did not seek clarification or reconsideration, and it did not appeal. It did not seek any protections against overbroad disclosures to Simplot, Cal Ida or anyone else. Instead, its attorneys began reviewing and producing the information it now claims is privileged and confidential.

1         These decisions are difficult to understand. CALAMCO's attorneys knew the disclosed materials included "numerous attorney–client communications" and "substantive discussions" of the UAN 32 contract at the center of this lawsuit. Morris Decl. ¶ 7. They knew Simplot controlled Cal Ida. *See* Opp'n Pet. at 4. They knew Simplot was "becoming increasingly adverse to CALAMCO." Morris Decl. ¶ 4. It had threatened litigation. Glynn Decl. ¶¶ 4–5. They believed Perkins Coie faced a conflict of interest as a result of its representation of both Simplot and the class B directors. *Id.* ¶ 6. And yet they chose to disclose CALAMCO's privileged and confidential information to Cal Ida's attorneys at Perkins Coie.

        Perhaps CALAMCO's attorneys thought it was inevitable that Simplot would obtain the documents they produced. After all, the three class B directors are Simplot executives, Simplot controls how Cal Ida votes its shares, and Perkins Coie represents both groups. CALAMCO's attorneys might have thought Perkins Coie's attorneys could not separate what they had learned about CALAMCO in their capacity as the class B directors' attorneys from their representation of Cal Ida and Simplot. As a result, they might have concluded it would be futile to resist disclosures to Cal Ida. If so, they decided to disclose the company's confidential information to Cal Ida, and Perkins Coie cannot be faulted for accepting that decision. Moreover, this court is the wrong place to litigate the question. If CALAMCO did not believe Perkins Coie could keep proper confidences, it should have sought relief in the state court writ proceedings.

        Whatever the reason for CALAMCO's disclosures, disqualifying Perkins Coie is not the remedy. Disqualification would punish Simplot and its attorneys for the decisions of CALAMCO and its attorneys. Simplot has a right to the attorneys it selects, and those attorneys have an interest in representing Simplot. Disqualifying Perkins Coie would saddle Simplot with costs and delays while it finds new counsel. Even if Perkins Coie were disqualified, CALAMCO has not explained why Cal Ida must return the disclosed files or why Cal Ida could not give those same materials to Simplot. CALAMCO's attorneys voluntarily provided attorney–client communications to Cal Ida, so Perkins Coie's successor could argue it is entitled to the same documents, given that an attorney can waive a client's privilege in some circumstances. *See, e.g.*, *D.C. by & through Garter v. Cty. of San Diego*, No. 15-01868, 2016 WL 11621269, at *7 (S.D.

Cal. Oct. 7, 2016). Additionally, other tools remain available to prevent abuses. For example, CALAMCO could seek a protective order in this case. *See, e.g.*, E.D. Cal. L.R. 141.1; Fed. R. Civ. P. 26(c)(1).

These circumstances are reason enough to deny CALAMCO's motion, but its position also lacks support in the rules of professional conduct. It does not cite any particular rule. Instead, it asks the court to infer from case law that Perkins Coie faces an impermissible conflict. None of the cases on which CALAMCO relies is controlling. *See, e.g.*, Mot. Disq. at 9 (acknowledging "[t]he circumstances here are not precisely identical to those in the cases cited"). Some were decided based on previous versions of the professional rules. *See, e.g.*, *William H. Raley Co. v. Super. Ct.*, 149 Cal. App. 3d 1042, 1046–47 (1983).

CALAMCO relies most heavily on the California Court of Appeal's decision in *Acacia Patent Acquisition, LLC v. Superior Court*, 234 Cal. App. 4th 1091 (2015). *Acacia* was itself a case without precedent, and its circumstances defy a simple summary, so it is worth reviewing in detail. A law firm had represented a company in a patent dispute, and the case ended with a multimillion-dollar settlement in the company's favor. *See id.* at 1094. Later, a fee disagreement arose, and that law firm hired a second law firm to pursue its fees from the company. *See id.* at 1094–95. The fee dispute eventually settled. *Id.* at 1095. The second firm then took on a new case: representing an expert from the original patent dispute to sue the same company for wrongly withholding consulting fees. *See id.* But the second firm had obtained the company's privileged information during the previous fee dispute, *see* Cal. Evid. Code § 958, so the company moved to disqualify the second firm from representing the expert, *see Acacia*, 234 Cal. App. 4th at 1096. In short, the second firm had legitimately obtained a non-client's privileged information and was now litigating against that non-client in a similar case.

Finding no binding authority, the court of appeal drew an analogy to cases about successive representations, when an attorney litigates against its former client. *See id.* at 1097–98. To be clear, the case in *Acacia* was not a successive representation. The allegedly conflicted firm had never represented the company itself. It was adverse to the company in the fee dispute, too. But the same danger loomed. A law firm had obtained the company's privileged

14

information, and now it was litigating against the company in a similar case. *See id.* at 1104–08. After reviewing decisions from California and other states, the court extended the successive representation rule: "a disqualifying conflict can arise, with regard to an adverse nonclient, by way of a law firm representing another law firm." *Id.* at 1104. Disqualification is not automatic. "Rather, a court must examine (1) whether the first representation resulted in a broad disclosure of the nonclient's privileged information (i.e., something beyond the attorney-client retainer agreement and the number of hours worked) and (2) whether a substantial relationship exists between the two matters." *Id.* Applying that rule, the court of appeal decided the company's motion to disqualify should have been granted. First, the evidence "amply demonstrated" the second firm "had access to thousands of privileged documents." *Id.* at 1096. Second, the expert's claims were similar to the claims in the previous fee dispute. *See id.* at 1105–06.

*Acacia* does not support CALAMCO's position. In *Acacia*, the court of appeal left no doubt that its decision was narrow. It confined itself to "the limited realm of cases featuring attorneys as parties opposed to their former clients." *Id.* at 1107–08. Perkins Coie does not represent another firm that in turn previously represented CALAMCO. The two cases also differ more fundamentally. The disqualified firm in *Acacia* had obtained the company's privileged and confidential files through an established and limited evidentiary exception for disputes between lawyers and clients. The confidential nature of those files was indisputable and preserved. CALAMCO's files, by contrast, were disclosed to Cal Ida without any similar protections against later use. It is not clear what obligation Cal Ida has to keep CALAMCO's information in confidence, if any at all.

The legal environment of CALAMCO's disclosure was also more complicated. The well-defined duty of confidentiality that tied the attorneys to their clients in *Acacia* contrasts starkly with the web of relationships that entangles CALAMCO, its shareholders, its directors, its management, Simplot and the attorneys representing all of them. CALAMCO's arguments illustrate these complexities, undermining its reliance on *Acacia*. For example, it portrays the directors' efforts here in the state court writ proceedings as a successful plea for assistance in discharging their fiduciary duties to the corporation, *see, e.g.*, Mot. Disq. at 4, 9–10, and it points

15

1   out there was no contract litigation between CALAMCO and Simplot at the time, *see* Reply Disq.
2   at 9.  But CALAMCO also claims the class B directors were resisting the company's plans to
3   enter the UAN 32 market and were boycotting board meetings.  *See, e.g.*, Mot. Disq. at 4.
4   Similarly, it suggests they were beholden to Simplot.  *See, e.g.*, *id.* at 2.

5      The other cases CALAMCO cites fall further afield.  No case involved information
6   disclosed knowingly to a recipient who, like Cal Ida, was controlled by an adversary, had no
7   obvious right to nonpublic and privileged information, and was not bound to keep confidences.
8   *See generally, e.g.*, *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000) (per curiam) (joint
9   defense agreement); *Diva Limousine, Ltd. v. Uber Techs., Inc.*, No. 18-05546, 2019 WL 144589
10  (N.D. Cal. Jan. 9, 2019) (co-plaintiffs, authors of supportive amicus briefs); *Morrison Knudsen*
11  *Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223 (1999) (attorney, client and client's
12  subsidiary); *William H. Raley Co.*, 149 Cal. App. 3d 1042 (directors of corporation and attorneys
13  and clients).

14     Finally, CALAMCO argues Perkins Coie must be disqualified because it is on both sides
15  of a dispute between Simplot and CALAMCO's directors: on the one hand, Perkins Coie
16  represents the class B directors, who have fiduciary duties to CALAMCO; on the other, it
17  represents Cal Ida and Simplot.  *See* Mot. at 11–12.  Here as well, CALAMCO cites no rules of
18  professional conduct.  Two rules could support its position.  First, "[a] lawyer shall not, without
19  informed written consent from each client and compliance with paragraph (d), represent a client if
20  the representation is directly adverse to another client in the same or a separate matter." Cal. R.
21  Prof'l Conduct 1.7(a) (Nov. 1, 2018) (footnote omitted).  Paragraph (d) limits the conflicts a
22  client may waive.  Cal. R. Prof'l Conduct 1.7(d) (Nov. 1, 2018).  Second, "[a] lawyer shall not,
23  without informed written consent from each affected client and compliance with paragraph (d),
24  represent a client if there is a significant risk the lawyer's representation of the client will be
25  materially limited by the lawyer's responsibilities to or relationships with another client . . . ."
26  Cal. R. Prof'l Conduct 1.7(b) (Nov. 1, 2018) (footnote omitted).

27     Perkins Coie is not litigating against a current client.  Nor has CALAMCO shown the
28  class B directors' position is actually adverse to Simplot's or Cal Ida's.  Simplot argues it is not.

16

*See* Opp'n Disq. at 13 ("Perkins Coie has at all times advocated the position of Simplot, Cal Ida, and the Class B Directors that [the] UAN32 Project would breach CALAMCO's agreements with, and fiduciary duties to, Simplot and Cal Ida."). Even if Perkins Coie's representation of one client materially limits its representation of another, whether in this matter or in the state court proceedings, it is for Perkins Coie to resolve the issue with its clients, likely by informed written consent. *See* Cal. R. Prof'l Conduct 1.7(a)–(d).

## IV.   CONCLUSION

The request to file under seal (ECF No. 27) is **granted**. Simplot may file its unredacted Opposition to CALAMCO's Motion to Remand, the accompanying unredacted declarations of Chris Shelden and Richard Sunderland, Exhibits B and C of the Shelden declaration, and all of the exhibits to the declaration of Brendan Sasso under seal. CALAMCO's motions to remand (ECF No. 7) and disqualify (ECF No. 8) are **denied**. A status (pretrial scheduling) conference is set for **December 1, 2022 at 2:30 p.m.** before the undersigned, with a joint report due fourteen days prior.

IT IS SO ORDERED.

DATED: October 12, 2022.

CHIEF UNITED STATES DISTRICT JUDGE