UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALAMCO,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>    v.<br><br>J. R. Simplot Company, et al.,<br><br>    Defendants and Counterclaimants. | No. 2:21-cv-01201-KJM-KJN<br><br>ORDER |

    Plaintiff CALAMCO and defendant J.R. Simplot Company dispute CALAMCO's obligations under a contract related to a fertilizer known as UAN 32. CALAMCO moves for judgment in its favor on the pleadings and moves to dismiss portions of Simplot's counterclaims. As explained in this order, the court cannot conclude as a matter of law, referencing only the undisputed pleadings, that CALAMCO's interpretation of the disputed agreement is correct. The court also declines to consider Simplot's allegations and counterclaims piecemeal, as Simplot proposes. The motions are therefore **denied**.

**I.    ALLEGATIONS**

    CALAMCO and Simplot disagree about many aspects of their history, but much is also undisputed. Simplot is a global food and agricultural business, which sells fertilizers, agricultural

chemicals and other products. Compl. ¶ 5, ECF No. 1-1;[1] Suppl. Countercl. ¶ 5, ECF No. 80.[2] CALAMCO is an agricultural cooperative. Compl. ¶ 9; Suppl. Countercl. ¶ 37. It was originally organized in the 1950s by a fertilizer company and a group of farmers that wanted to secure fertilizers at higher volume and lower cost. Compl. ¶ 9; Suppl. Countercl. ¶ 37. Several years later, Simplot had acquired an interest in CALAMCO through a subsidiary. Compl. ¶ 11; Suppl. Countercl. ¶ 44. CALAMCO and Simplot then agreed to work together to provide the cooperative's shareholders—many of whom are growers and fertilizer distributors—with UAN 32, a fertilizer that had proven difficult to obtain in the past. *See* Compl. ¶ 17; Suppl. Countercl. ¶¶ 67, 74. They superseded the original contract in 2011, *see* Compl. ¶ 19; Suppl. Countercl. ¶ 96, and amended it again in 2020, *see* Compl. ¶ 27; Suppl. Countercl. ¶ 109.

That amended contract, which is its most recent iteration, is the kernel of this lawsuit. At its center are three obligations: (1) CALAMCO will construct and operate a tank and related logistical facilities; (2) Simplot will "take" a minimum volume of UAN 32 from the tank every year; and (3) CALAMCO will operate the facilities exclusively for Simplot, provided Simplot complies with the agreement and "uses reasonable good faith efforts" to supply CALAMCO's shareholders with the UAN 32 they require. *See* Compl. ¶ 19 & Ex. A at 1–3; Suppl. Countercl. ¶ 96. The 2020 amendment modifies the third obligation above by allowing CALAMCO to use a portion of the facilities for other purposes. *See* Compl. ¶ 27 & Ex. B; Suppl. Countercl. ¶ 109.

CALAMCO would now like to supply its shareholders with UAN 32 directly, which would put it in direct competition with Simplot. *See* Compl. ¶¶ 28–31; Suppl. Countercl. ¶¶ 114–30. CALAMCO argues the amended UAN 32 agreement does not bar it from doing so. It asserts one claim for a judicial declaration of its rights under that agreement. *See* Compl. ¶¶ 32–34.

---

[1] The court previously ordered Simplot to file redacted copies of its notice of removal on the public docket. ECF No. 50. Simplot has not complied with that order, and as a result, it appears the only filed copies of CALAMCO's complaint remain under seal. If a redacted copy of the notice of removal and its exhibits, including CALAMCO's complaint, are not filed **within seven days,** the court will direct the Clerk's Office to unseal ECF No. 1 and all of its attachments.

[2] For simplicity, the court refers to Simplot's First Supplemental Amended Answer and Counterclaim as the "Supplemental Counterclaim" in this order.

In response, Simplot argues the UAN 32 agreement does not permit CALAMCO to supply its shareholders with UAN 32 directly, at least not without Simplot's permission. *See, e.g.*, Suppl. Countercl. ¶ 1. It relies on a close reading of the agreement itself, but also on allegations beyond that agreement, including the parties' long history of dealing exclusively, their relationship as participants in a longstanding joint venture, CALAMCO's history of paying certain "patronage" dividends, and their original purpose in striking an agreement to source and distribute UAN 32, among other things. *See id.* ¶¶ 44–113. Simplot asserts five counterclaims against CALAMCO: a claim for declaratory judgment of its rights under the contract, CALAMCO's bylaws, and the alleged joint venture relationship, *id.* ¶¶ 173–75; a claim for breach of fiduciary duty based on the alleged joint venture relationship, *id.* ¶¶ 176–79; a claim for breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 180–83; and two claims based on implied contracts to pay the patronage dividends and related rights, *see id.* ¶¶ 184–93.

CALAMCO seeks judgment on the pleadings under Rule 12(c) with respect to its own claim for declaratory relief, and it moves to dismiss Simplot's first three counterclaims under Rule 12(b)(6). *See generally* Mot., ECF No. 81.[3] Simplot opposes. *See generally* Opp'n, ECF No. 82. At the outset, it asks the court to deny CALAMCO's motions summarily because CALAMCO did not meet and confer before filing, as required by this court's standing order. *See id.* at 8; Standing Order at 3, ECF No. 3-1. CALAMCO should have conferred with Simplot about its anticipated motion specifically before filing. Productive discussions between attorneys spare the time the parties would have devoted to unnecessary or ineffective arguments and helps refine and focus effective arguments. The court declines, however, to deny CALAMCO's motion for this reason alone. The parties discussed the pleadings and amendments extensively before CALAMCO filed its current motion, albeit in a different context. *See* Kula Decl. ¶¶ 2–3, ECF No. 82-1; *see also* Stipulations, ECF Nos. 63, 66, 68, 70, 75, 77. The court expects the parties to

---

[3] CALAMCO also moved to dismiss the previous iteration of Simplot's counterclaims, *see* Mot. Dismiss, ECF No. 61, but the parties met and conferred and stipulated to the filing of Simplot's operative Supplemental Counterclaim. *See* Stip. & Order, ECF No. 79. The operative Supplemental Counterclaim superseded its predecessor, so CALAMCO's previous motion is **denied as moot**. *See Jackson v. Fong*, 870 F.3d 928, 934 (9th Cir. 2017).

1   comply fully with the court's standing orders on meeting and conferring in the future.  Failure to
2   do so may result in summary denials or sanctions.
3        Briefing is now complete.  *See generally* Opp'n, ECF No. 82; Reply, ECF No. 85.  The
4   court submitted the matter after a hearing on May 19, 2023.  Adam Friedenberg appeared for
5   CALAMCO, and Donald Kula appeared for Simplot.

6   **II.   JUDGMENT ON THE PLEADINGS**

7        "After the pleadings are closed—but early enough not to delay trial—a party may move
8   for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The pleadings are "closed" after an
9   answer, counterclaim or any court-permitted reply pleading has been filed.  *See* Fed. R. Civ. P.
10  7(a).  Simplot has filed an answer and counterclaims in response to CALAMCO's complaint, so
11  the pleadings are closed for purposes of CALAMCO's motion under Rule 12(c).  Simplot argues
12  otherwise, but it relies incorrectly on cases in which no responsive pleading had been filed.  *See*
13  Opp'n at 8 (citing *Stiles v. Wal-Mart Stores, Inc.*, No. 14-02234, 2017 WL 3783091, at *7 (E.D.
14  Cal. Aug. 31, 2017), *reconsidered in part*, 2018 WL 3093501 (E.D. Cal. June 20, 2018); *Stands
15  Over Bull v. Bureau of Indian Affs.*, 442 F. Supp. 360, 367 (D. Mont. 1977)).
16       A court can grant a motion for judgment on the pleadings only if "there is no issue of
17  material fact in dispute, and the moving party is entitled to judgment as a matter of law."
18  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  To determine what is in dispute and what
19  is not, courts refer primarily to the pleadings, but they may also consider exhibits attached to the
20  pleadings, among other things.  *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir.
21  2012); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989);
22  Fed. R. Evid. 10(c).
23       Perhaps because defendants seek judgment on the pleadings more commonly than
24  plaintiffs do, courts have often written that motions for judgment on the pleadings are
25  "functionally identical" to motions to dismiss for failure to state a claim under Rule 12(b)(6).
26  *E.g.*, *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (quoting *United States ex
27  rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)).  Some
28  courts have also held—without noting any caveats—that when a party moves for judgment on the

pleadings, the court "must accept all factual allegations in the complaint as true." *E.g.*, *Fleming*, 581 F.3d at 925. When a plaintiff, rather than a defendant, seeks judgment on the pleadings, the court does not decide whether the complaint "states a plausible claim," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), but rather whether the pleader is entitled to judgment in full on the merits, so Rule 12(b)(6) is not an analogue in this context. Nor does the court assume the plaintiff's allegations are true in response to that same plaintiff's own motion for judgment on the pleadings; instead, the court accepts an allegation only if the defendant has admitted it is true. *See Hal Roach*, 896 F.2d at 1550. In that scenario, the court must also view the plaintiff's allegations in the light most favorable to the defense. *See id.*

Because Rule 12(c) motions can end the case, courts hesitate to grant them, lest they wrongly deprive a litigant "a full and fair hearing on the merits." *Haller v. Advanced Indus. Comput. Inc.*, 13 F. Supp. 3d 1027, 1029 (D. Ariz. 2014) (quoting *Carrasco v. Fiore Enters.*, 985 F. Supp. 931, 934 (D. Ariz. 1997)). As one federal court of appeals has put it, "the party seeking judgment on the pleadings shoulders a heavy burden of justification." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019). Several courts have thus required the moving party to show it is "clearly entitled to prevail." *E.g.*, *Kruse v. State of Hawai'i*, 857 F. Supp. 741, 749 (D. Haw. 1994), *aff'd*, 68 F.3d 331 (9th Cir. 1995); *see also* 5C Charles A. Wright, et al., Fed. Prac. & Proc. § 1368 n.3 (April 2023 Update to 3d ed.) (collecting authority).

In this case, CALAMCO seeks a judicial declaration it "has the right to sell UAN 32 in competition with Simplot" and "there is no contractual or other limitation on CALAMCO's right to do so." Compl. ¶ 33; *see also id.* ¶ 34 (requesting declaration "that CALAMCO is entitled to sell UAN 32 in competition with Simplot"). That last request—a declaration that no "other limitation" constrains CALAMCO—is quite broad, to say the least. It would presumably encompass everything from antitrust law to state health and safety regulations. CALAMCO has not shown it is entitled to such a broad declaration. CALAMCO's more narrow proposed declaration of contractual rights cannot be rejected so summarily. Whether CALAMCO is "clearly entitled to prevail" in that request is a question of California contract law: does the

5

amended handling and storage agreement impose any limits on CALAMCO's right to sell UAN in competition with Simplot?

When a court is asked to interpret a contract under California law, it must "give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. The written contract terms ordinarily control; that is, "when parties enter an integrated written agreement," as they have in this case, "extrinsic evidence may not be relied upon to alter or add to the terms of the writing." *Riverisland Cold Storage, Inc. v. Fresno–Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1174 (2013) (citing Cal. Code Civ. Proc. § 1856 and Cal. Civ. Code § 1625). This rule, commonly called the parol evidence rule, is a rule of substantive law, not of procedure. *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004). "It is founded on the principle that when the parties put all the terms of their agreement in writing, the writing itself becomes the agreement." *Riverisland*, 55 Cal. 4th at 1174. Because a contract's "written terms supersede statements made during the negotiations," evidence other than those written terms is "irrelevant, and cannot be relied upon." *Id.* (emphasis omitted).

Despite this rule against extrinsic evidence, California courts may consider extrinsic evidence "to resolve an ambiguity" in an integrated agreement. *WYDA Assocs. v. Merner*, 42 Cal. App. 4th 1702, 1710 (1996); *see also* Cal. Code Civ. Proc § 1856(g); *Winet v. Price*, 4 Cal. App. 4th 1159, 1165–66 (1992). Extrinsic evidence can both explain an obviously ambiguous term and reveal a latent ambiguity. *Pac. Gas & E. Co. v. G.W. Thomas Drayage etc. Co.*, 69 Cal. 2d 33, 37 (1968); *Emp'rs Reinsurance Co. v. Superior Court*, 161 Cal. App. 4th 906, 920 (2008). Deciding whether an agreement is ambiguous is a two-step process. "First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party." *Winet*, 4 Cal. App. 4th at 1165. This evidence might include testimony about the circumstances of the contract's creation, the parties' conduct before and after signing, and common industry terms. *See, e.g.*, *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 990 (9th Cir. 2006) (per curiam) (applying California law).

6

If the contract is not "'reasonably susceptible' to the interpretation urged," then "the case is over." *S. Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 847–48 (1995). But "[i]f in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." *Winet*, 4 Cal. App. 4th at 1165. Whether a contract is ambiguous is a question of law, but if the contract is ambiguous, any conflicts in the evidence ordinarily cannot be resolved without a trial. *See San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*, 132 F.3d 1303, 1307 (9th Cir. 1997); *WYDA*, 42 Cal. App. 4th at 1710.

When Rule 12(c) is overlaid with these interpretive rules, CALAMCO's burden is more concrete: it can prevail only if its proposed interpretation is clearly correct based on the undisputed pleadings. The most relevant undisputed portions of the pleadings are thus the terms of the amended handling and storage agreement, which were attached to the complaint. Under California law, Simplot may introduce evidence beyond the words of the amended agreement—and thus beyond CALAMCO's pleadings—if the amended agreement could reasonably be interpreted as Simplot contends. So to prevail under Rule 12(c), CALAMCO must show clearly that the amended agreement unambiguously permits it to compete with Simplot to sell UAN 32.

The first relevant provision in the amended agreement is "Recital C," which begins by framing the parties' relationship and purposes:

> Calamco and Simplot enter this Handling and Storage Agreement ("Agreement") to supersede [their previous] March 2001 agreement, and to set forth the terms and conditions under which both parties will work together to accomplish their interdependent mutual goals.

Compl. Ex. A at 1, ECF No. 1-3. The recital then describes three basic obligations:

> (1) Calamco will construct the New Tank of Thirty Thousand (30,000) short tons, and maintain and operate such Facilities as are capable of receiving and storing Seventy Thousand (70,000) short tons of liquid Product;
>
> (2) Simplot, subject to the provisions herein, shall take from the Facilities each contract year of this Agreement, not less than One Hundred Thousand (100,000) short tons of Product (the "Minimum Commitment"); and

> (3) so long as Simplot is in compliance with the provisions of this Agreement and uses reasonable good faith efforts to meet the Product volume requirements of Calamco shareholders, Calamco will operate the Facilities for the exclusive use of Simplot. For purposes of this Agreement, "meeting the Product volume requirements of Calamco shareholders" means fulfilling market orders placed by identified Calamco shareholders at Simplot's then applicable prices, contract/ordering requirements, delivery schedules and Terms and Conditions of Sale.

*Id.* (line breaks inserted for readability).

The next sentence in the recital anticipates something of an exception to the third obligation above. It describes what the parties can and must do if Calamco would like to use the same "Facilities" for a different purpose:

> In the event Calamco expresses an interest to use a portion of the Facilities (e.g. the load-out equipment) for distribution of a different product from a new tank that might be constructed in the future, Calamco must first obtain the consent of Simplot, which will not be unreasonably withheld so long as such use does not have the effect of: i) restricting Simplot's import/intake or distribution of Product; ii) interfering with Calamco's ability to provide services under this Agreement; or iii) creating a material detriment to Simplot.

*Id.* at 1–2. The 2020 amendment modified this provision by adding a sentence at its conclusion:

> Nothing contained in this Recital C shall prohibit CALAMCO from utilizing the inbound piping for its own purposes, so long as the use does not interfere with Simplot's ability to obtain delivery of Product.

Compl. Ex. B at 1, ECF No. 1-3.

The parties identify only one other relevant provision. Under paragraph 1, "Simplot shall cause Product to be delivered to Calamco's Port of Stockton receiving terminal," and those "deliveries shall be coordinated with Calamco to reduce or eliminate delays and demurrages that might otherwise occur." Compl. Ex. A at 2. The first subparagraph within paragraph 1 prohibits "commingling" of products without the parties' agreement: "Product shall not be commingled with similar materials belonging to any other party whatsoever, unless otherwise mutually agreed by both parties or provided herein." *Id.* The 2020 amendment also added a sentence to the end

of this same subparagraph: "Use by CALAMCO of the inbound piping shall not be considered a violation of this Subsection 1) a), or any other provision of this Agreement." Compl. Ex. B. at 1.

These provisions may very well impose no limits on CALAMCO's rights to compete with Simplot in the market for UAN 32. After all, none of them state expressly that CALAMCO may not sell UAN 32. But that is not the question at this stage of the case. To obtain judgment under Rule 12(c), CALAMCO must show its proposed interpretation is the only reasonable interpretation, even when inferences are drawn in Simplot's favor, and it has not.

Three parts of the recital above could support Simplot's position. First, the agreement obligates Simplot to use "reasonable good faith efforts" to supply CALAMCO's shareholders with all of the UAN 32 they require. This term could reasonably imply the parties understood Simplot was the shareholders' exclusive supplier. Their long history of exclusive dealing could support that conclusion. So, too, could Simplot's allegations that it reluctantly agreed to supply UAN 32 and only in exchange for an exclusive arrangement that would yield specific dividends. *See* Suppl. Countercl. ¶¶ 67–71. Second, the recital obligates CALAMCO to operate the facilities for Simplot's exclusive benefit. This obligation implies CALAMCO may not use the facilities for its own purposes, which would ostensibly include a rival distribution business. Nothing in the pleadings suggests CALAMCO had another facility for distributing imported UAN 32 to its shareholders. CALAMCO's promise to operate the only useable distribution facility exclusively for Simplot's benefit could imply CALAMCO had accepted Simplot's role as exclusive supplier. Third, similarly, the recital foresees that CALAMCO could use a "portion" of the facilities if it constructs a "new tank that might be constructed in the future," but only for distribution of a "different product," and only with Simplot's permission. This language could reasonably be interpreted as limiting CALAMCO to products other than UAN 32, and even then, Simplot's permission would be necessary.

The 2020 amendment does not eliminate this potential ambiguity. It clarified that CALAMCO could use the "inbound piping" for its own purposes, but not if doing so interfered with "Simplot's ability to obtain delivery" of UAN 32. It is reasonable to interpret these

additions as an agreement that CALAMCO was relieved of its obligation to obtain Simplot's permission to use the inbound piping, but only to distribute products other than UAN 32.

For these reasons, the court cannot conclude as a matter of law, with only the pleadings to consult, that CALAMCO's proposed interpretation is the only reasonable interpretation. CALAMCO's motion for judgment on the pleadings is denied. The court need not and does not consider Simplot's alternative argument that the handling and storage agreement is a requirements contract. *See* Opp'n at 13.

### III.   MOTION TO DISMISS

CALAMCO also moves to dismiss Simplot's first three counterclaims for failure to state a claim under Rule 12(b)(6). In a footnote, CALAMCO states it is not challenging Simplot's "claims related to shareholder 'patronage' refunds." *See* Mot. at 2 n.1. "Patronage dividends" are annual dividends CALAMCO pays to its shareholders. *See* Suppl. Countercl. ¶¶ 49–50. Historically, it has paid these dividends pro rata based on each shareholder's fertilizer purchases. *See id.* ¶¶ 50–52. Simplot alleges CALAMCO recently changed the way some of these dividends were calculated in an effort to discourage shareholders from buying UAN 32 sourced from Simplot. *See id.* ¶¶ 125–30.

It is unclear what limit CALAMCO meant to impose by stating it is not challenging claims related to shareholder patronage dividends. At argument, CALAMCO's counsel did not clarify its position entirely. Counsel explained that CALAMCO was not challenging Simplot's recently added supplemental allegations about patronage dividends; it was moving to dismiss portions of Simplot's counterclaim without regard to Simplot's allegations about patronage dividends. Counsel also made the puzzling claim that all of Simplot's counterclaims were at issue and that Simplot could have asserted additional, independent counterclaims about patronage dividends. *Contra* Mot. at 1–2 (moving to dismiss only first three counterclaims, not claims four and five, which deal with patronage dividends).

There are several ways CALAMCO's request could be interpreted. First, CALAMCO might simply be reinforcing that it does not currently move to dismiss counterclaims 4 and 5. As CALAMCO later acknowledges, however, portions of the first claim also relate to patronage

dividends, and it does not seek dismissal of the first claim entirely. *See* Mot. at 7 n.3. The second and third counterclaims are also based on allegations about patronage dividends. *See, e.g.*, Suppl. Countercl. ¶¶ 179, 183. CALAMCO's counsel also stated at argument that all of Simplot's counterclaims were in dispute. For these reasons, CALAMCO's statement must communicate some limit beyond a restriction to the first three counterclaims.

Second, CALAMCO's request could be to disregard some of Simplot's allegations, i.e., those it added when it supplemented its counterclaim. As noted above, the Supplemental Counterclaim superseded its predecessors. *See supra* note 3 (citing *Jackson*, 870 F.3d at 934). The court will not consider Simplot's previous allegations. More broadly, CALAMCO cites no authority to show a court may disregard some of a party's factual allegations when adjudicating a Rule 12(b)(6) motion. The court is aware of no such authority. When a party moves to dismiss under Rule 12(b)(6), the court "must accept as true all of the allegations contained in a complaint." *Iqbal*, 556 U.S. at 678. As noted, previous iterations of Simplot's pleadings have now been superseded. The court will consider Simplot's pleading as a whole.

Third, CALAMCO's motion might be interpreted as a request to dismiss only those claims that in its view do not rest on allegations about patronage dividends, i.e., the first portion of counterclaim one and counterclaims two and three. CALAMCO contends in reply, for example, that "the UAN 32 issues are independent from 'patronage refunds.'" Reply at 2. The court cannot agree.

The court assumes without deciding that Simplot's first counterclaim can be appropriately divided into three independent claims for declaratory judgment as CALAMCO suggests. *See* Suppl. Countercl. ¶¶ 174–75. CALAMCO suggests the first of these three requests is unrelated to Simplot's allegations about patronage dividends. *See* Mot. at 7 n.3. In that first request, Simplot asks for "a Court decree . . . that the parties' agreement precludes CALAMCO from acquiring and selling UAN32 to its shareholders." Suppl. Countercl. ¶ 175. But like Simplot's other proposed declarations, this first request is tied up in allegations about patronage dividends. Elsewhere in the counterclaim, Simplot alleges CALAMCO impliedly agreed to pay patronage dividends based on shareholder purchases of Simplot UAN32. *See, e.g., id.* ¶ 185. And Simplot's first request for

declaratory relief refers to the "ancillary joint venture partnership agreements," which would include any implied agreements about patronage dividends. *See id.* ¶ 174.

Simplot's other counterclaims are more difficult to disentangle from its allegations about patronage dividends. They each rest in part on allegations about Simplot's and CALAMCO's relationship and the duties they owe one another, including duties related to patronage dividends. *See, e.g., id.* ¶¶ 179, 183 (alleging CALAMCO deprived Simplot of patronage dividends in breach of fiduciary duties and the implied covenant to deal fairly and in good faith). Simplot similarly contends CALAMCO has withheld dividends in an effort to persuade its shareholders not to buy UAN 32 from Simplot, and it relies on the dividends to explain its allegation that the parties intended for Simplot to be an exclusive seller and to form a joint venture. *See, e.g.*, Opp'n at 4, 18 (summarizing and citing relevant allegations). In short, the court cannot determine whether Simplot has "stated a claim upon which relief can be granted" in any of its first three counterclaims without considering its allegations about patronage dividends and related rights.

Finally, CALAMCO's motion could be interpreted as a request to dismiss Simplot's counterclaims partially, that is, only to the extent those claims are unrelated to the patronage dividends. Parties may focus on only some claims or some parties in a Rule 12(b)(6) motion. Motions are commonly granted in part, and complaints are commonly dismissed in part. This consequence follows from the Federal Rules' liberal joinder provisions. *See, e.g.*, Fed. R. Civ. P. 18(a) (joinder of claims); Fed. R. Civ. P. 20(a) (joinder of parties). To that end, the federal rules expressly recognize a court can "direct entry of final judgment as to one or more, but fewer than all, claims or parties." Fed. R. Civ. P. 54(b). The Rules also permit courts to strike irrelevant allegations, Fed. R. Civ. P. 12(f), and to order a plaintiff to parse its claims more discretely, i.e., to request a "more definite statement," Fed. R. Civ. P. 12(e). But federal courts have often declined invitations to consider claims or allegations piecemeal, referring the moving party to other more relevant rules and legal standards, such as Rule 12(f). *See, e.g., Upper Branch Prods., Inc. v. Innerworkings, Inc.*, No. 12-08789, 2013 WL 12141345, at *4 (C.D. Cal. Jan. 29, 2013); *Rezaipour v. County of Los Angeles*, No. 12-05005, 2012 WL 12951549, at *1 (C.D. Cal. Oct. 16,

2012); *Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009). This court adopts this approach here.

The likely consequences of piecemeal motion practice weigh against making any attempt to adjudicate Simplot's counterclaims only partially as well. Litigants have a right to decide what to include in their pleadings and what claims to assert. *See, e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 & n.7 (1987). If an opposing litigant may divide up or reorganize the pleader's claims and conquer the divided claims one by one, it could eviscerate the pleader's right to organize its pleading. Piecemeal practice under Rule 12 could also encourage duplicative or serial motions, contrary to its own terms. *See* Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

This is not to say claims must always survive wholly if they are to survive at all. A defendant may assert a defense in a Rule 12(b)(6) motion, *see Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013), and courts do not deny motions based on affirmative defenses just because the defense does not align perfectly with each claim. For example, if some portions of a claim are preempted, federal district courts have been willing to dismiss the preempted portions only. *See, e.g.*, *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1081–82 (C.D. Cal. 2011) (collecting authority). Similarly, a court could limit a claim to events within the relevant limitations period. *See, e.g.*, *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 787 (E.D. Pa. 2008). But CALAMCO does not advance a broad affirmative defense along these lines. It challenges the counterclaims themselves.

For these reasons, the motion to dismiss is denied.

## IV.  CONCLUSION

CALAMCO's previous motion to dismiss (ECF No. 61) is **denied as moot**. CALAMCO's current motion for judgment on the pleadings and to dismiss (ECF No. 81) is **denied**. This order "settles" the pleadings for purposes of this court's Rule 16 scheduling order

(ECF No. 73): **within fourteen days**, the parties shall complete initial disclosures and file their joint report on scheduling and alternative dispute resolution.

If Simplot does not file a redacted copy of its notice of removal and the attached exhibits **within seven days**, the court will direct the Clerk's Office to unseal ECF No. 1 and all of its attachments.

This order resolves ECF Nos. 61, 81.

IT IS SO ORDERED.

DATED: June 27, 2023.

_____
CHIEF UNITED STATES DISTRICT JUDGE