UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALAMCO, | No. 2:21-cv-01201-KJM-CSK |
| Plaintiff, | ORDER |
| v. | |
| J.R. Simplot Company, et al., | |
| Defendants. | |
| And related counterclaims. | |

Plaintiff and counterclaim-defendant Calamco moves to bar defendant and counterclaim-plaintiff J.R. Simplot Company from offering the opinions of Keith R. Ugone, Ph.D., its retained damages expert, at trial. As explained in this order, Simplot did not disclose the theory of damages its expert ultimately relied on to form his opinions, as required by the initial disclosure provisions in Federal Rule of Civil Procedure 26(a)(1), and Simplot has not demonstrated this nondisclosure was either substantially justified or harmless. The court therefore **grants** Calamco's motion.

## I. BACKGROUND

Calamco and Simplot dispute whether a contract they signed in 2011 bars Calamco from competing with Simplot in the market to sell a fertilizer known as UAN 32. *See, e.g.*, Order (July 22, 2025) at 2–13, ECF No. 164. Simplot also contends Calamco has breached its implied covenant of good faith and fair dealing under the same 2011 contract by cutting off "patronage" dividends it had previously paid to Calamco's shareholders. *See id.* at 13, 22–23. These dividends acted as refunds on UAN 32 sold by Simplot, effectively granting Calamco's shareholders a discount for those purchases—and thus creating an incentive to buy UAN 32 from Simplot rather than from another source, such as Calamco itself. *See id.*

Calamco filed this case in state court in 2021. *See* Compl, ECF No. 1-1. After Simplot removed the case to this court, it asserted several counterclaims, including claims for declaratory relief and for breach of the implied covenant of good faith and fair dealing. *See generally* Countercl., ECF No. 5; Am. Countercl., ECF No. 80. Among other relief, it requested "general, special, actual and statutory damages" in connection with its claim that Calamco had violated its implied covenant of good faith and fair dealing. Am. Countercl. at 36 (prayer for relief).

After the court denied Calamco's motion to dismiss these counterclaims, it instructed the parties to exchange their initial disclosures under Federal Rule of Civil Procedure 26(a). *See* Order (June 28, 2023), ECF No. 90. Rule 26(a) requires litigants to disclose a variety of information, including "a computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). Simplot disclosed it was seeking "[c]ompensatory damages of $2,000,000 for loss of patronage dividends paid to Simplot as a result of CALAMCO's breach of agreements with Simplot and its bylaws by unilaterally terminating patronage dividends on Simplot UAN32." Eldredge Decl. Ex. 1 at 21,[1] ECF No. 158-1.

The next month, in September 2023, Calamco served an interrogatory on Simplot asking for a statement of the facts supporting its claim for damages and requesting documents relating to that claim. Eldredge Decl. ¶ 4 & Ex. 3. In response, Simplot agreed to produce responsive

---

[1] Pages cited here are those applied by the CM/ECF system at the top right of ECF No. 158-1.

documents, but it otherwise objected to the interrogatory. *Id.* ¶ 4 & Ex. 3 at 39–40. Among other things, Simplot argued Calamco's interrogatory was premature because it sought "expert information and reports." *Id.* Ex. 3 at 40. Despite these objections, Simplot supplemented its response to the same interrogatory a few months later. *Id.* ¶ 6 & Ex. 5. It quoted its initial disclosure and said it would calculate its damages "by computing the position Simplot would have occupied absent Calamco's breaches relative to its position at the time of trial." *Id.* Ex. 5 at 74. It also reiterated that its "damages computation will be the subject of expert opinion and testimony produced to Calamco in accordance with the Court's schedule." *Id.*

In 2024, the parties continued pretrial discovery. Some of this discovery related to Simplot's damages allegations. In February, Simplot produced a spreadsheet tracking its UAN 32 sales between 2001 and 2023. *See* Joint Statement, ECF No. 145-1. In April, Calamco asked Simplot to designate witnesses under Federal Rule of Civil Procedure 30(b)(6) to offer testimony about several topics, including its damages. Eldredge Decl. ¶ 8. In July, Simplot responded to a Calamco interrogatory by stating that it had been "damaged by a loss of profits, loss of patronage dividends, loss of market share, price erosion, loss of customer goodwill, and loss of industry reputation, among other damages." Resp. Am. Interrog. No. 0, Eldredge Decl. Ex. 6, ECF No. 158-1. In December, Simplot produced updated versions of the spreadsheet it had previously disclosed, along with UAN 32 pricing and margin data for 2001–2024. *Id.* ¶¶ 11–12. Simplot also designated two witnesses to answer questions about its damages claims under Rule 30(b)(6), and they testified in depositions in December 2024 and January 2025, respectively. *See id.* ¶ 12. But neither witness could explain what damages Simplot had sustained. *See, e.g.*, *id.* Ex. 10 at 14; *id.* Ex. 11 at 117–21. To further complicate matters, Simplot's counsel objected and instructed these witnesses not to answer questions about their communications with an expert Simplot had retained. *See, e.g.*, *id.* Ex. 10 at 8–9; *id.* Ex. 11 at 13–15. In any event, the deadline for conducting fact discovery passed, and Simplot never supplemented its initial disclosure. By all accounts, Simplot was still seeking "$2,000,000 for loss of patronage dividends paid to Simplot." Eldredge Decl. Ex. 1 at 21.

During expert discovery, in late January 2025, Simplot produced a report by Ugone, an economist, who offered estimates of Simplot's damages and gave opinions about their causes. *See id.* Ex. 2. Contradicting Simplot's initial disclosure, he did not estimate damages using "loss of patronage dividends," but rather calculated Simplot's lost profits, and his estimates were up to seven times larger than the $2 million Simplot had previously disclosed. *See id.* ¶ 7. Calamco retained an expert economist to offer opinions in response to Ugone's report, Kenneth Serwin, Ph.D. Eldredge Decl. ¶ 17 & Ex. 13. In Serwin's opinion, Ugone's calculations are "economically unreliable and likely overstated" because they do not adequately account for several confounding factors, such as the terms of a contract between Simplot and its supplier; the war in Ukraine, which disrupted the global supply of fertilizers; and the actions of Simplot's competitors, which may have captured some of the relevant market for UAN 32, among other things. *See, e.g.*, Serwin Rep. at 3–4. To the extent Simplot suffered any damages as a result of Calamco's decision to stop paying patronage dividends, Serwin believes those damages would not be much higher than about $1.3 million. *Id.*

Calamco filed a motion for summary judgment in May 2025. *See generally* Mot. Summ. J., ECF No. 142. While that motion was pending, it also filed a motion to bar Ugone from offering opinions about Simplot's damages at trial, arguing his damages estimates go beyond the theory Simplot initially disclosed under Rule 26(a)(1). *See generally* Mot. Exclude, ECF No. 158. The court granted Calamco's motion for summary judgment in part while its motion to exclude was pending, ECF No. 164, and then took the pending motion to exclude under submission without holding a hearing, after briefing was complete. *See generally* Opp'n, ECF No. 162; Reply, ECF No. 165; Surreply, ECF No. 169.[2]

The court must first resolve two preliminary disputes before it reaches the dispute about Ugone's opinions and Simplot's damages claims: first, whether Simplot can file some of the relevant documents under seal, and second, whether the intervening summary judgment order mooted the dispute.

---

[2] The court permitted Simplot to file a surreply addressing the effects of the summary judgment order. *See* Order (Aug. 1, 2025), ECF No. 168.

4

## II. FILING UNDER SEAL

Simplot asks the court to file several documents under seal. *See* Simplot Sealing Mem., ECF No. 163. These documents include some of the most crucial pieces of evidence at the center of the parties' current dispute, including Ugone's and Serwin's expert reports, excerpts from their depositions, and excerpts from depositions of the witnesses Simplot offered to testify about its damages claims. Calamco does not believe the information in these documents is confidential and thus believes those documents can be filed on the public docket. *See* Calamco Not., ECF No. 159; Calamco Reply, ECF No. 166.

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978) (footnote omitted). Although that right is not absolute, "'a strong presumption in favor of access' is the starting point." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). This presumption "is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). And so, ordinarily, a party who wishes to seal a court record must offer "compelling reasons" to keep that document from the public. *Kamakana*, 447 F.3d at 1178. "Under this stringent standard, a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Ctr. for Auto Safety*, 809 F.3d at 1096–97 (quoting *Kamakana*, 447 F.3d at 1178).

"Despite this strong preference for public access," the Ninth Circuit has "'carved out an exception,' for sealed materials attached to a discovery motion unrelated to the merits of a case." *Id.* at 1097 (quoting *Foltz*, 331 F.3d at 1135) and citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213–14 (9th Cir. 2002)). "Under this exception, a party need only satisfy the less exacting 'good cause' standard." *Id.* (quoting *Foltz*, 331 F.3d at 1135). "The

5

1  'good cause' language comes from Rule 26(c)(1), which governs the issuance of protective orders
2  in the discovery process." *Id.* Discovery is normally "conducted in private." *Seattle Times Co.*
3  *Rhinehart*, 467 U.S. 20, 33 (1984). "Much of the information that surfaces during pretrial
4  discovery may be unrelated, or only tangentially related, to the underlying cause of action." *Id.*
5  There is for this reason "no tradition of public access" to the materials the parties exchange with
6  one another during discovery. *Ctr. for Auto Safety*, 809 F.3d at 1097 (quoting *Anderson v.*
7  *Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986)). "Applying the good cause standard from Rule
8  26(c) as an exception for discovery-related motions makes sense, as the private interests of
9  litigants are 'the only weights on the scale.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1180).

10  Courts have often distinguished situations in which the "compelling reasons" and "good
11  cause" standards apply by using the words "dispositive" and "non-dispositive," respectively. *Id.*
12  But the Ninth Circuit has emphasized that this language should not be understood as an
13  instruction to use the stricter "compelling reasons" standard only when the sealing request is tied
14  to a motion to dismiss, for summary judgment or for judgment on the pleadings. *See id.* at 1098.
15  "[P]ublic access to filed motions and their attachments does not merely depend on whether the
16  motion is technically 'dispositive.'" *Id.* at 1101. "Rather, public access will turn on whether the
17  motion is more than tangentially related to the merits of the case." *Id.*

18  Simplot cites the Ninth Circuit's decision in *Center for Auto Safety*, but it does not discuss
19  whether Calamco's motion is "dispositive" in the sense that it is more than tangentially related to
20  the merits of the case or to any particular cause of action. *See* Simplot Sealing Mem. at 1. The
21  court need not decide now whether Calamco's pending motion is "dispositive," however, because
22  Simplot offers neither "compelling reasons" nor "good cause" to keep those documents from the
23  public. It simply asserts in a few sentences that information in the files will cause "particularized
24  harm" if disclosed, citing the assigned Magistrate Judge's discussion in an order resolving a
25  dispute in this case about a confidentiality designation under the terms of the discovery-only
26  protective order. *See id.* at 1–2 (citing Order (June 25, 2025), ECF No. 156). As Simplot
27  acknowledges, the documents at issue here differ from those the Magistrate Judge was
28  considering in the cited order, as does the context. *See id.* at 2 & n.1.

6

1    The court thus denies Simplot's request to file under seal without prejudice to renewal, as
2 specified in the conclusion of this order. But to ensure the pending motion is decided
3 expeditiously, the court has reviewed the documents in question on an in camera basis. If
4 Simplot does not ultimately carry its burden to show those documents should be filed under seal
5 or on the public docket with redactions, and if the same documents are not filed on the public
6 docket, then it may be necessary for Simplot to withdraw any reliance on those documents in this
7 matter. *See* E.D. Cal. L.R. 141(e); Fed. R. Civ. P. 5.2(d).

**III.    MOOTNESS**

Calamco argues Ugone's opinions became irrelevant while its motion has been pending. Reply at 1–2. It reads his report as supporting only Simplot's "claim that Calamco wrongfully terminated patronage payments on Simplot UAN 32," *id.* at 1, for which Calamco already obtained summary judgment, *see* Order (July 22, 2025) at 21–22, 26. If Ugone's opinions are truly tied only to that claim and none other, then his opinions would be irrelevant, and Calamco's motion would be moot. Simplot argues Ugone's opinions are not so narrow. It argues his estimates of lost profits also support Simplot's claim that Calamco breached the implied covenant of good faith and fair dealing, which remains in the case. *See* Surreply at 2; Order (July 22, 2025) at 22–23, 27.

Simplot's position is better reasoned than Calamco's. It is true, as Calamco contends, that Simplot's previous declaratory relief claim about UAN 32 patronage payments would have depended on Ugone's opinions about the effects of that termination. But Simplot also asserts a claim for breach of the implied covenant of good faith and fair dealing, and to prevail on that claim, it must prove causation and damages. *See* Order (July 22, 2025) at 23. Simplot could rely on Ugone's opinions about Simplot's lost profits to show Calamco's actions caused damages. For these reasons, Calamco's motion to exclude is not moot.

**IV.    EXCLUSION**

As summarized above, Calamco's arguments for the exclusion of Ugone's opinions do not target his qualifications or methods under Federal Rule of Evidence 702, nor the expert disclosure procedures in Federal Rule of Civil Procedure 26(a)(2). Calamco relies instead on the more

general disclosure requirements of Rule 26(a)(1), which obligate each party to disclose "a computation of each category of damages claimed." Fed. R. Civ. 26(a)(1)(A)(iii). Calamco argues Simplot described a fundamentally different theory and sum of damages in its initial disclosures than Ugone says now he would testify to at trial. *See* Mot. at 12. For that reason, Calamco argues, the court should limit Simplot to the theory and sum of damages it initially disclosed. *See id.* at 12–15.

      The parties agree about the basic disclosure rules that govern this dispute. Unless some exception applies, and Simplot cites none, "a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). Each party "must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." *Id.* Although these mandatory disclosures are limited to what is possible to say with "the information then reasonably available," a litigant is "not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." Fed. R. Civ. P. 26(a)(1)(E). A party who has made a disclosure under Rule 26(a) also "must supplement or correct" that disclosure if it "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

      When these disclosure rules were first added to Rule 26, the Advisory Committee wrote that one "major purpose" of their inclusion was "to accelerate the exchange of basic information about the case" and to reduce the paperwork associated with requesting that information. Fed. R. Civ. P. 26, Advisory Committee Notes to 1993 Amendment. It urged courts to apply the initial disclosure rules "in a manner to achieve those objectives." *Id.* In the years since then, district courts thus have emphasized, for example, that Rule 26(a) allows litigants "to understand their potential exposure and make informed decisions as to settlement and discovery." *Simmons v.*

*Bauer Rentals*, No. 23-00523, 2025 WL 474258, at *2 (E.D. Cal. Feb. 12, 2025). Courts also have underscored that a "lump sum" damages estimate does not suffice, given the Rule's reference to a "computation." *City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003). Nor is that computation enough on its own. District courts have commonly required a disclosure of the party's "theory of damages," too. *LT Game Int'l Ltd. v. Shuffle Master, Inc.*, No. 12-01216, 2013 WL 321659, at *6 (D. Nev. Jan. 28, 2013) (collecting authority).

A party's disclosure obligations also may change as a case goes on. Early on, an initially satisfactory damages disclosure and computation might not offer an opposing party much detail. *See Tutor-Saliba*, 218 F.R.D. at 222. An expert's assistance might be necessary before any "precise method of calculation" can be disclosed. *Frontline Med. Assocs., Inc. v. Coventry Health Care*, 263 F.R.D. 567, 569 (C.D. Cal. 2009) (emphasis omitted). But a litigant cannot satisfy its disclosure obligations under Rules 26(a) and (e) solely by promising to disclose an expert's opinions or calculations eventually. *See id.* at 570. If a business intends to recover its lost profits, for example, it must say it intends to pursue its lost profits and offer whatever information is "reasonably available to it" in calculating those lost profits, such as its revenues and expenses and the period over which it is seeking those lost profits. *See id.*

The first question here, then, is whether Simplot disclosed the "computation of each category of damages" that Ugone's opinions would support at trial—or, in other words, whether Simplot's initial disclosures, plus any supplements or corrections, lay out a different theory and computation than Ugone does in his report.

As noted, Simplot initially disclosed it was seeking "[c]ompensatory damages of $2,000,000 for loss of patronage dividends paid to Simplot as a result of Calamco's breach of agreements with Simplot and its bylaws by unilaterally terminating patronage dividends on Simplot UAN32." Eldredge Decl. Ex. 1 at 21. When Simplot made this disclosure, it had alleged Calamco previously paid patronage dividends to any of its shareholders who bought UAN 32 from Simplot, and it alleged the amount of the dividend to each shareholder was based on the amount of UAN 32 that shareholder purchased. *See* Am. Counterclaim ¶ 125. Against the

1  backdrop of these allegations, Calamco would likely have understood Simplot's theory to be that
2  $2 million more would have passed from Calamco to its shareholders and thus indirectly to
3  Simplot if Calamco had continued paying dividends on Simplot UAN 32.

4  Ugone does not estimate Simplot's damages this way. He instead estimates how much
5  higher Simplot's profits would have been if Calamco had continued paying shareholder dividends
6  for Simplot UAN 32. *See* Ugone Rep. ¶ 65. In his opinion, Simplot would have sold more
7  UAN32 at higher prices, both in the past and in the future, if Calamco had not terminated the
8  dividend. *See id.* (referring to "lost unit sales" and "price erosion"). Ugone also offers a different
9  bottom line figure than the $2 million Simplot initially disclosed. He lays out several ranges of
10 damages estimates using a combination of alternative methods. His estimates of lost profits due
11 to lost sales in the past, for example, range from about $1.2 million to $2.8 million before
12 accounting for any prejudgment interest that might be due, *see id.* at 57, and his estimates of
13 reduced profits caused by lower prices on past sales, again without any prejudgment interest, fall
14 in a range of about $2.8 million to $3.9 million, *see id.* at 59. Adding the highest estimated
15 values from each of these ranges, and after adding prejudgment interest and making present value
16 adjustments, Ugone's opinions would support a total damages claim of up to approximately $14.2
17 million, more than seven times higher than the $2 million Simplot initially disclosed.[3]

18 Ugone agreed in his deposition that his theory of damages is different from the theory
19 Simplot initially disclosed. *See* Ugone Dep. at 7–10. "I did not calculate a loss of patronage
20 dividends to Simplot," he testified, referring to Simplot's initial disclosure. *Id.* at 9–10. He used
21 a different "methodology." *Id.* He did not explain exactly how his method differed, given his
22 uncertainty about what the initial disclosure meant, but he did make clear he "evaluated damages
23 as [he] felt was appropriate to evaluate damages regardless of what some legal document might

---

[3] This total represents the sum of $3.34 million in "past lost profits from lost unit sales," $4.45 million in "price erosion damages on actual unit sales," $0.76 million in "price erosion damages on lost unit sales," $1.08 million in "lost profits on future lost unit sales," $3.91 million in "price erosion damages on future (forecasted) actual unit sales," and $0.65 million in "price erosion damages on future (forecasted) lost unit sales," in each instance including either prejudgment interest or present value adjustments, as the case may be. Ugone Rep. ¶ 7 (emphasis omitted).

have said." *Id.* at 7–9. As he understood his assignment, moreover, it was broader than the initial disclosure: he was to estimate "the harm to Simplot from the elimination of the patronage rebates" in general. *Id.* at 10.

Simplot did not supplement or correct its disputed disclosure before it disclosed Ugone's opinions. To the contrary, as the case went on, it reiterated the same disclosure. *See* Eldredge Decl. Ex. 5, Suppl. Resp. Interrog. No. 11, ECF No. 158-1. Even now, despite Ugone's unambiguous disavowal of lost patronage dividends as a method of estimating Simplot's damages, Simplot contends its initial disclosure needs no modification or supplement. *See* Opp'n at 7 ("[T]he plain truth is that the damages analysis carried through to Simplot's expert opinion on damages is that stated in its Initial Disclosures."). That position is untenable. Not only did Simplot disclose a different theory of damages. It disclosed a much smaller sum.

When, as in this case, a party does not disclose the information it was required to disclose, or if it does not supplement or correct its disclosure when new facts or information come to light, then that party "is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[4] Simplot argues its actions were substantially justified or harmless. Opp'n at 10–12. Calamco disagrees. *See* Mot. at 13–15. A variety of factors can help a court decide whether a nondisclosure was substantially justified or harmless, including "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (other alterations omitted) (quoting *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017)). It is Simplot's burden to prove its nondisclosure was substantially justified or harmless. *See Yeti v. Molly Ltd., v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). It has not done so.

---

[4] When this sanction would amount "to dismissal of a claim," the district court cannot impose that sanction unless "the claimed noncompliance involved willfulness, fault, or bad faith" and no "lesser sanctions" are viable. *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012) (citations omitted); *see also Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 821 (9th Cir. 2019). Simplot does not contend the exclusion of Ugone's opinions would amount to the dismissal of any claim it could pursue at trial.

11

The court begins with prejudice and whether Calamco could cure it—factors one and two in the paragraph above. Simplot did eventually send Calamco some information that reduced the harm of its nondisclosure and allowed Calamco to prepare a defense. As summarized above, in its January 2024 supplemental interrogatory response about its damages claims, Simplot told Calamco its damages could be quantified by "computing the position Simplot would have occupied absent Calamco's [alleged] breaches relative to its position at the time of trial," which is arguably a generalized description of the analysis Ugone eventually undertook. Suppl. Resp. Interrog. No. 11, Eldredge Decl. Ex. 5, ECF No. 158-1. Simplot also said a precise computation would be "the subject of expert opinion and testimony produced to Calamco in accordance with the Court's schedule." *Id.* The next month, February 2024, Simplot sent Calamco a spreadsheet with information about its UAN 32 sales. *See* Opp'n at 8–9; Reply at 5. A few months later, in a July 2024 interrogatory response, Simplot told Calamco it had been and would be "damaged by a loss of profits, loss of patronage dividends, loss of market share, price erosion, loss of customer goodwill, and loss of industry reputation, among other damages," albeit in relation to a different claim than its claim for breach of the implied covenant of good faith and fair dealing. *See* Resp. Am. Interrog. No. 0, Eldredge Decl. Ex. 6, ECF No. 158-1. It also reiterated once more that it would offer more specific information in an expert report. *See id.* After a few more months, in December 2024, Simplot sent Calamco an updated spreadsheet with information about its UAN 32 sales and profit margins. *See* Opp'n at 8–9; Reply at 5. In later January 2025, then, Simplot disclosed Ugone's opinions when it sent his report to Calamco that month. *See* Ugone Rep. at 1. And finally, Simplot made Ugone available for a deposition in June 2025, *see* Eldredge Decl. ¶ 16 & Ex. 12, which permitted Calamco to engage an economist to offer opinions in response to Ugone's analysis, as it did, *see generally* Serwin Rep., Eldredge Decl. Ex. 13.

Calamco does not dispute that it received this information, but it argues Simplot's delayed disclosure of its lost-profits theory of damages prevented Calamco from asking for and reviewing a variety of evidence during discovery. It would have asked Simplot for information about its customers' "purchasing behavior, including whether Calamco's patronage influenced their decision." Mot. at 8–10. It also would have interviewed or deposed Simplot's customers, and it

12

1  would have sent a subpoena to a company affiliated with Simplot, which is also one of Simplot's
2  largest customers, to obtain information from that company about why it stopped buying UAN 32
3  from Simplot.  *See id.* at 9.  Calamco also would have pursued more information about Simplot's
4  UAN 32 supplier and the terms of their supply agreement.  *Id.*  Finally, Calamco would have
5  investigated the broader market, for example by seeking documents and testimony from Simplot's
6  competitors about whether patronage dividends played any role in their decisions to enter and exit
7  the California UAN 32 market when they did, and it would have investigated whether and how
8  the war in Ukraine changed the supply of and demand for UAN 32.  *See id.*  Calamco argues it
9  did not follow these leads because the deadline for fact discovery had passed by the time it
10 received a copy of Ugone's report.  *See id.* at 10.  In reply, Calamco also points out that Simplot
11 did not actually produce many of the documents and responses that it relies on in opposing
12 Calamco's pending motion to show there was no harm or prejudice until after discovery closed,
13 and then only after Calamco asked the Magistrate Judge for assistance by filing discovery
14 motions.  *See* Reply at 7.

15      Simplot does not question the potential relevance of the information Calamco argues it
16 would have sought.  Nor does Simplot respond to Calamco's explanation for why it did not seek
17 that information during fact discovery.  It argues instead that Calamco is to blame for not
18 pursuing this information more vigorously after the time for fact discovery had already passed,
19 *see* Opp'n at 4, and it argues that if Calamco was dissatisfied with Simplot's initial disclosures,
20 Calamco "should have sought to compel a supplement," *id.* at 12.  It accuses Calamco of
21 remaining "willfully blind."  *Id.*  There are at least two problems with this position.  Most
22 importantly, it ignores the express terms of Rule 26.  Rule 26(a)(1)(A) required Simplot to
23 disclose its theory of damages and its damages computation "without awaiting a discovery
24 request," and Rule 26(e)(1)(A) imposed a continuing and affirmative obligation on Simplot to
25 "supplement or correct its disclosure . . . in a timely manner" if it learned "that in some material
26 respect the disclosure [was] incomplete."  Simplot's argument also contradicts the well-known
27 purposes of Rule 26, i.e., "to accelerate the exchange of basic information about the case," Fed.
28 R. Civ. P. 26, Advisory Committee Notes to 1993 Amendment, to reduce the paperwork

1  associated with requesting that information, *id.*, and to allow those who face damages claims "to
2  understand their potential exposure and make informed decisions as to settlement and discovery,"
3  *Simmons*, 2025 WL 474258, at *2.

4        The next factor of the four is whether allowing Simplot to rely on a lost-profits theory of
5  damages and seek up to $14 million would likely disrupt the trial. *Brodeur*, 41 F.4th at 1192.
6  Without the additional information Calamco describes in its motion, it will be litigating at a
7  disadvantage at trial, even with Serwin's critiques. If the court reopens discovery to mitigate this
8  disadvantage before trial, then a trial date would almost certainly be delayed, possibly for at least
9  a few months, and both sides would incur additional costs. Courts often have held that the need
10 for belated discovery and scheduling adjustments show a failure to disclose was not harmless.
11 *See, e.g.*, *Ingenco*, 921 F.3d at 821; *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843,
12 863 (9th Cir. 2014); *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir.
13 2008).

14       That may be true even if, as in this case, the party in receipt of an inadequate initial
15 disclosure still managed to engage an expert to offer opinions in rebuttal. *See SiteLock LLC v.*
16 *GoDaddy.com LLC*, No. 19-02746, 2021 WL 2895503, at *11 (D. Ariz. July 9, 2021). When one
17 party says its damages computation will ultimately depend on the opinions of an expert, as
18 Simplot did many times in this case, the fact discovery period gives the other party an opportunity
19 to obtain, test and scrutinize any data that will later bear on the opposing expert's opinions. *See*
20 *id.* A faulty initial disclosure that leads the receiving party off in the wrong direction may
21 hamstring a rebuttal expert if it leads to an "undeveloped record." *Id.* It is for these reasons,
22 among others, that district courts have held that litigants cannot satisfy their initial disclosure
23 obligations by citing the undisclosed analyses of a retained expert. *See Frontline Med. Assocs.*,
24 263 F.R.D. at 569–70. Calamco makes a persuasive case that Simplot's inadequate initial
25 disclosures prevented it from seeking and obtaining a substantial amount of relevant information
26 about Simplot's competitors, its customers and its agreement with its supplier, among other
27 things. *See* Mot. at 8–10, 13.

1    Finally, with respect to willfulness and bad faith, *see Brodeur*, 41 F.4th at 1192, Calamco
2    characterizes Simplot's actions as a transparently intentional attempt to conceal its damages
3    theory, *see* Mot. at 14–15; Reply at 9–10.  For example, it argues Simplot withheld information
4    from the witnesses it designated to testify on its behalf about its damages claims.  *See* Mot. at 5–
5    6.  One witness had spoken to Ugone, but he could not offer much information about Simplot's
6    theory of its damages.  *See id.*  The other also had spoken to Ugone, but Simplot's counsel
7    instructed him not to answer questions about those conversations on privilege grounds.  *See id.* at
8    6.  But the full picture is more complicated.  As Simplot points out in opposition, the Magistrate
9    Judge ultimately offered Calamco an opportunity to reopen one of these depositions to ask about
10   the witness's conversations with Ugone, but Calamco did not pursue a reopened deposition.  *See*
11   Opp'n at 3.  The court cannot conclude on this record that Simplot concealed information
12   willfully or otherwise acted in bad faith.  That said, Simplot has offered no explanation for its
13   failure to disclose that it was seeking lost profits.  Nor has it explained why it never supplemented
14   its initial disclosures.  For that reason, while the fourth factor does not weigh heavily in favor of
15   excluding Ugone's opinions, it does favor that sanction.

16   In sum, although the court cannot find Simplot acted willfully or in bad faith, Simplot has
17   not demonstrated its actions were either harmless or substantially justified.  Its failure to disclose
18   a lost-profits theory of damages and its reference to a much lower potential damages sum
19   prevented Calamco from developing relevant evidence during fact discovery.  Permitting curative
20   discovery now would likely delay if not disrupt the trial.  Although it might be possible "to
21   scramble to make up for the delay," *Ollier*, 768 F.3d at 863, doing so would prolong discovery
22   and pretrial litigation further in what is already an aging case.  More than four years have passed
23   since Simplot removed this case from state court, and the court already has granted multiple
24   extensions of the pretrial discovery and motion deadlines.  *See* Orders, ECF Nos. 73, 100, 121,
25   128, 132.

26   Exclusion is a "harsh sanction to be sure." *Yeti*, 259 F.3d at 1106 (quoting *Ortiz-Lopez v.*
27   *Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir.
28   2001)).  But pretrial schedules and firm disclosure rules "permit the court and the parties to deal

15

1   with cases in a thorough and orderly manner," and courts "must be allowed to enforce them,
2   unless there are good reasons not to." *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th
3   Cir. 2005). Simplot has offered no good reasons. It does not offer any reason why it did not
4   mention lost profits in its initial disclosures. It does not explain why it never supplemented those
5   disclosures. The enforcement of these pretrial disclosure rules does not amount to a "procedural
6   gotcha," as Simplot contends. Opp'n at 1. Courts have warned many times that Rule 37 creates a
7   "self-executing" and "automatic" sanction that gives "teeth" to the initial disclosure requirements
8   in Rule 26(a), with which every litigant must comply. *Yeti*, 259 F.3d at 1106 (quoting Fed. R.
9   Civ. P. Advisory Committee Notes to 1993 Amendments); *see also, e.g.*, *Key v. Qualcomm Inc.*,
10  129 F.4th 1129, 1143–44 (9th Cir. 2025); *Ingenco*, 921 F.3d at 821–22; *Ollier*, 768 F.3d at 861–
11  64; *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011); *Hoffman*,
12  541 F.3d at 1179–80. Here, the record supports holding Simplot to the requirement that it
13  comply.

14  **V.   CONCLUSION**
15      The motion to exclude (ECF No. 158) is **granted**.
16      The request to file under seal (ECF No. 159) is **denied without prejudice to renewal**
17  **within fourteen days**. Any such renewed motion must address whether Calamco's motion to
18  exclude Ugone's opinions was "more than tangentially related to the underlying cause of action,"
19  *Ctr. for Auto Safety*, 809 F.3d at 1099, and whether limited redaction would suffice to avoid any
20  harms that may arise from the public disclosure of specific information, proposing redactions if
21  so. In the alternative, Simplot may file a notice stating it does not object to the public filing of the
22  documents in question.
23      The court previously instructed Simplot to file a redacted copy of its notice of removal
24  and attachments on the public docket. *See* Order (June 28, 2023) at 2 n.1, ECF No. 90. The court
25  warned that if Simplot did not do so, it would instruct the Clerk's Office to unseal the notice of
26  /////
27  /////

16

1  removal and its attachments.  *Id.* at 14.  Simplot has not complied with the court's order.  The
2  Clerk's Office is therefore instructed to **unseal ECF No. 1 and its attachments**.
3         IT IS SO ORDERED.
4  DATED:  August 22, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE